Filed 1/29/21  P. v. Daley CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALCLIFF M. DALEY,<br><br>    Defendant and Appellant. | B301243<br><br>(Los Angeles County<br>Super. Ct. No. SA052445) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark E. Windham, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Alcliff M. Daley appeals from the trial court's denial of his Penal Code section 1170.95 petition[1] for vacation of his first degree murder conviction and resentencing. Because Daley is ineligible for relief as a matter of law, we affirm the court's order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

1. *The murder and Daley's conviction*

In 2004, Daley and Rohan McDermott planned to steal marijuana from Troy Lewis and Dwane Godoy. After luring the men into Daley's apartment, Daley pointed a gun at Godoy and Lewis, and McDermott taped their hands behind their backs. Daley threatened to kill them and leave their bodies to rot in a closet. When Daley noticed that Godoy had managed to free his hands, he put the gun to Godoy's head and again threatened to kill him. McDermott retaped Godoy's hands and also taped his feet. When McDermott and Daley exited the apartment, Godoy managed to free himself and escaped after struggling with McDermott, who was outside the front door. Lewis did not escape. His body was discovered in the apartment; he had been shot in the forehead.

A jury found Daley guilty of first degree murder with true findings on special circumstance allegations that the murder was committed during an attempted kidnapping and an attempted

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    We derive the factual and procedural background primarily from our unpublished opinion in this case, of which we take judicial notice on our own motion. (Evid. Code, § 451, subd. (a).)

2

robbery.  (§§ 187, subd. (a), 190.2, subd. (a)(17)(A) & (B)).[3]  It also found Daley personally used a firearm during the offense. (§§ 12022, 12022.53, subd. (b)).  The trial court sentenced Daley to life in prison without the possibility of parole, plus 10 years. In 2007, this division affirmed the judgment of conviction. (*People v. Daley* (Oct. 18, 2007, B190721) [nonpub. opn.].)

      2.  *Section 1170.95 petition*

      In June 2019, after passage of Senate Bill No. 1437 (2017– 2018 Reg. Sess.) (Senate Bill 1437), Daley filed a petition for vacation of his murder conviction and resentencing.  Using a preprinted form, he checked boxes stating that he had been convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; he was not the actual killer; he did not, with the intent to kill, aid and abet the actual killer; he was not a major participant in the felony or did not act with reckless indifference to human life; and he could not now be convicted of first degree felony murder in light of changes to section 189 effectuated by Senate Bill 1437.  He also checked a box requesting that counsel be appointed for him.

      On June 28, 2019, the trial court summarily denied the petition.  Daley was not present, and was not represented by counsel.  The court found Daley was ineligible for relief as a matter of law because the jury's true findings on the special circumstance allegations established he intended to kill, or was a major participant in the murder and acted with reckless indifference to human life.  Further, the trial court found that

---

        **3**     Daley and McDermott were tried separately. McDermott was also found guilty of special circumstance first degree murder.

Daley was the actual killer based on the jury's finding that he personally used a firearm.

Daley appeals the trial court's denial of his petition.

DISCUSSION

Daley contends that the trial court erred by summarily dismissing his petition based on the jury's special circumstance findings, without appointing counsel for him. We disagree.

1. *Applicable legal principles*

a. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Munoz* (2019) 39 Cal.App.5th 738, 749–750, 763, review granted Nov. 26, 2019, S258234.)

Prior to Senate Bill 1437's enactment, under the felony-murder rule "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248 (*Lamoureux*); *People v. Powell* (2018) 5 Cal.5th 921, 942.) Similarly, under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and

4

probable consequence of the target offense." (*Lamoureux*, at p. 248.)

Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (*Gentile, supra*, 10 Cal.5th at p. 842.) It amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."

b. *Section 1170.95's petitioning procedure*

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-invalid felony-murder or natural and probable consequences theory may petition for vacation of their convictions and resentencing. A defendant is eligible for relief under section 1170.95 if he meets three conditions: (1) he must have been charged with murder under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) must have been convicted of first or second degree murder, and (3) could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437. (§ 1170.95, subd. (a).)

Evaluation of a section 1170.95 petition requires a multi-step process: an initial review to determine the petition's facial sufficiency; a prebriefing, " 'first prima facie review' " to

5

preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897 (*Tarkington*), review granted Aug. 12, 2020, S263219; *Verdugo, supra,* 44 Cal.App.5th at pp. 327–330, rev.gr.)

When conducting the first prima facie review, the court must determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law, i.e., whether he or she was convicted of a qualifying crime, based on a charging document that permitted the prosecution to proceed under the natural and probable consequences doctrine or a felony-murder theory. (*Tarkington, supra,* 49 Cal.App.5th at pp. at pp. 897–898, rev.gr.; *Verdugo, supra,* 44 Cal.App.5th at pp. 329–330, rev.gr.) If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may summarily deny the petition without appointing counsel. (*Tarkington*, at pp. 898, 900–902; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178 (*Torres*), review granted June 24, 2020, S262011; *Verdugo*, at p. 332; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139–1140, review granted Mar. 18, 2020, S260598.)

If, however, the petitioner's eligibility is not established as a matter of law, the court must appoint counsel and permit briefing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (*Verdugo, supra,* 44 Cal.App.5th at p. 330, rev.gr.; *Tarkington, supra,* 49 Cal.App.5th at p. 898, rev.gr.) If the petitioner makes such a showing, the

court must issue an order to show cause and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subds. (c), (d); *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165–1166.)  At that hearing, the prosecution has the burden to prove, beyond a reasonable doubt, that the defendant is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)

  2.  *Application here*

   a.  *Contentions*[4]

  Daley challenges the trial court's ruling on several grounds. First, he argues that the trial court erred by denying his petition without appointing counsel.  In his view—and contrary to the analyses in *Verdugo* and *Lewis*—based on the statutory language and the Legislature's intent, counsel must be appointed and an order to show cause issued as soon as a defendant files a facially sufficient section 1170.95 petition, i.e., one that has the correct boxes checked and does not affirmatively aver facts that would disqualify him as a matter of law.  Second, he avers that, based on the language and structure of section 1170.95, a trial court is not permitted to go beyond the allegations in the petition and examine the record to determine eligibility until counsel is appointed and an evidentiary hearing transpires pursuant to section 1170.95, subdivision (d).  Third, he contends that the court erred by finding him ineligible based exclusively on the jury's special circumstance findings, which predated our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). Finally, he urges that the jury's true finding on the firearm use

---

  [4] We have considered both the initial and the supplemental briefs filed by the parties.

7

enhancement does not establish he was the actual killer, and therefore does not demonstrate his ineligibility as a matter of law.

The People counter that, based on the statutory language and the Legislative history of the bill, the trial court properly reviewed the record of conviction and was not required to appoint counsel because Daley was ineligible as a matter of law, given the jury's special circumstance findings. In their view, Daley's interpretation of section 1170.95 is incorrect and would open the door to wholesale challenges to *any* prior jury finding, violating the principle that when a conviction is collaterally attacked, all presumptions favor its accuracy and fairness. Further, they argue, any error was harmless because it is not reasonably probable that Daley would have obtained a more favorable result had counsel been appointed. They also assert, as an alternative ground demonstrating ineligibility, that the trial court properly found Daley was ineligible because he was the actual killer.

b. *The trial court did not err by reviewing the record of conviction or by declining to appoint counsel*

We quickly dispose of Daley's contention that the trial court improperly reviewed the record of conviction. Numerous courts of appeal, including this one, have rejected the argument that a trial court is limited to consideration of the allegations in the petition when determining whether the petitioner has made a prima facie showing of eligibility. A court may consider readily ascertainable information in the record of conviction and the court file, including a prior court of appeal opinion. (See *People v. Palacios* (2020) 58 Cal.App.5th 845, 855–856; *People v. Gomez* (2020) 52 Cal.App.5th 1, 15–16 (*Gomez*), review granted Oct. 14, 2020, S264033; *People v. Soto* (2020) 51 Cal.App.5th

1043, 1055, review granted Sept. 23, 2020, S263939; *Tarkington, supra*, 49 Cal.App.5th at p. 898, rev.gr.; *People v. Lee* (2020) 49 Cal.App.5th 254, 262–263, review granted July 15, 2020, S262459; *People v. Law* (2020) 48 Cal.App.5th 811, 821, review granted July 8, 2020, S262490; *Torres, supra*, 46 Cal.App.5th at pp. 1173, 1178, rev.gr.; *Verdugo, supra*, 44 Cal.App.5th at pp. 329–330, rev.gr.; *People v. Lewis, supra*, 43 Cal.App.5th at pp. 1137–1138 & fn. 7, rev.gr.)

We likewise reject Daley's argument that the language of, and intent underlying, section 1170.95 required counsel to be appointed as soon as he filed a facially sufficient petition. To the contrary, we and other courts have held that a trial court may summarily deny a petition without appointing counsel if the record shows the defendant is ineligible as a matter of law. (See *Tarkington, supra*, 49 Cal.App.5th at pp. 901–902, rev.gr.; *Torres, supra*, 46 Cal.App.5th at p. 1173, rev.gr.; *Verdugo, supra*, 44 Cal.App.5th at pp. 332–333, rev.gr.; *People v. Lewis, supra*, 43 Cal.App.5th at pp. 1139–1140, rev.gr.; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 109, review granted Nov. 10, 2020, S264684.)[5]

---

[5] Our California Supreme court is currently considering whether a trial court may consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under section 1170.95, and when the right to counsel arises under section 1170.95, subdivision (c). (*People v. Lewis*, S260598.) Pending further guidance from our high court, however, Daley's arguments do not persuade us to deviate from our prior holdings on these points.

9

Daley argues that he had a constitutional right to counsel at the outset because the petitioning procedure under section 1170.95 is a critical stage of a criminal proceeding. This is so, he avers, because of the adversary nature of the petition process, combined with the potential for significant prejudice. Therefore, he posits, the court's failure to appoint counsel amounted to structural error, requiring per se reversal. We disagree.

Under both the state and federal Constitutions, a defendant has a right to counsel at all critical stages of a criminal prosecution. (U.S. Const., 6th Amend.; Cal. Const., art I, § 15; *Gardner v. Appellate Division of Superior Court* (2019) 6 Cal.5th 998, 1004 (*Gardner*); *People v. Doolin* (2009) 45 Cal.4th 390, 453; *People v. Rouse* (2016) 245 Cal.App.4th 292, 296–297 (*Rouse*).) Critical stages are those "events or proceedings in which the accused is brought in confrontation with the state, where potential substantial prejudice to the accused's rights inheres in the confrontation, and where counsel's assistance can help to avoid that prejudice." (*Gardner*, at pp. 1004–1005; *Rouse*, at p. 297 [" ' "[T]he essence of a 'critical stage' is . . . the adversary nature of the proceeding, combined with the possibility that a defendant will be prejudiced in some significant way by the absence of counsel." [Citation.]' "].) Thus, arraignments, preliminary hearings, postindictment lineups and interrogations, plea negotiations, and sentencing are all critical stages. (*Gardner*, at p. 1005; *Rouse*, at p. 297.) On the other hand, where legislation gives inmates serving otherwise final sentences the benefit of ameliorative changes to applicable sentencing laws, the Sixth Amendment is not necessarily implicated. (See *People v. Perez* (2018) 4 Cal.5th 1055, 1063–1064; *People v. Howard* (2020) 50 Cal.App.5th 727, 740 ["The retroactive relief provided by

section 1170.95 reflects an act of lenity by the Legislature" and does not implicate a defendant's Sixth Amendment rights]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 ["the retroactive relief . . . afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis" and defendants had no right to a jury trial on petition].)

The first, prebriefing prima facie review of a petition under section 1170.95 is not a critical stage of the proceedings. At that point, the court is simply tasked with determining whether there is a prima facie showing the petitioner falls within the provisions of the statute as a matter of law, making all factual inferences in his or her favor. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329, rev.gr.; *Tarkington*, *supra*, 49 Cal.App.5th at p. 898, rev.gr.) This initial prima facie review is not an adversarial proceeding. Indeed, in the instant case it does not appear that the People filed briefing or otherwise played any role in the trial court's denial of the petition. Adjudication of a section 1170.95 petition, at the eligibility stage, is not akin to a sentencing hearing. The court does not rule on disputed issues of fact; it must make all factual inferences in favor of the petitioner. (*Verdugo*, at p. 329; *Tarkington*, at p. 898.) And, the court is not called upon to exercise its discretion in any respect. Nor do we detect the possibility that counsel's absence could prejudice a petitioner in a significant way, or that counsel's presence at this stage is necessary to preserve his rights. Because the court's ruling must turn on undisputed facts that render a petitioner ineligible as a matter of law, counsel's representation could not meaningfully impact this analysis.

Daley asserts that due process requires that an incarcerated defendant must be afforded the right to counsel in

11

various instances even where the Sixth Amendment does not. "[I]f a postconviction petition by an incarcerated defendant 'attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns.' [Citations.]" (*Rouse*, *supra*, 245 Cal.App.4th at p. 300; *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 980–981.) "That right is a limited one, however, and only kicks in once the defendant makes a prima facie showing of entitlement of postconviction relief." (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1032, review granted Oct. 14. 2020, S264278.) Here, Daley has not moved past the initial eligibility stage; he has not made a prima facie case requiring issuance of an order to show cause. Accordingly, he had no due process right to counsel. And, because Daley is categorically ineligible for relief, he could have had no liberty interest in the appointment of counsel. (See *Tarkington*, *supra*, 49 Cal.App.5th at pp. 907–908, rev.gr.)

Thus, if the trial court correctly concluded that the special circumstance findings precluded relief as a matter of law, it was not required to appoint counsel before denying the petition. We turn to that question.

c. *The trial court correctly denied the petition because Daley is ineligible for relief as a matter of law*

To be eligible for resentencing, Daley was required to show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437. (§ 1170.95, subd. (a)(3).) Under section 189, as amended, a defendant can be convicted of felony murder if he was the actual killer; acted as a direct aider and abettor with the intent to kill; or was a major participant in the underlying felony and acted

12

with reckless indifference to human life. (§ 189, subd. (e); *People v. Murillo* (2020) 54 Cal.App.5th 160, 167 (*Murillo*), review granted Nov. 18, 2020, S264978.)

As noted, the jury found true two special circumstance allegations: that the murder was committed during an attempted kidnapping and an attempted robbery. (§ 190.2, subd. (a)(17)(A) & (B)). Although the record before us does not contain the jury instructions, Daley's counsel asserts that his jury was instructed with CALJIC No. 8.80.1. That instruction provides that, if the jury concludes a defendant was not the actual killer (or if it is unable to determine whether he was), it cannot find the special circumstances true unless it is satisfied beyond a reasonable doubt that the defendant, with the intent to kill, directly aided and abetted the murder; or, with reckless indifference to human life and as a major participant, aided and abetted the underlying offenses. The instruction also states that a defendant acts with reckless indifference to human life when he knows or is aware that his acts involve a grave risk of death to an innocent human being.

The record does not reveal what theory the People relied upon at trial to prove the murder. Assuming the prosecution relied upon a felony murder theory, the jury's findings on the special circumstance allegations make Daley ineligible for resentencing as a matter of law.

"The requirements for the felony-murder special circumstance did not change as a part of Senate Bill No. 1437, and are identical to the new requirements for felony murder following the enactment of Senate Bill No. 1437. In both instances, the defendant must have either actually killed the victim [citations]; acted with the intent to kill in aiding, abetting,

13

counseling, commanding, inducing, soliciting, requesting, or assisting in the killing [citations]; or been a major participant in the underlying felony and acted with reckless indifference to human life [citations].  By finding a special circumstance allegation true, the jury makes precisely the same finding it must make in order to convict a defendant of felony murder under the new law.  Because a defendant with a felony-murder special circumstance could still be convicted of murder, he is ineligible as a matter of law to have his murder conviction vacated." (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1140–1141 (*Galvan*), review granted Oct. 14, 2020, S264284; see *People v. Jones* (2020) 56 Cal.App.5th 474, 482 (*Jones*), review granted Jan. 27, 2021, S265854; *Gomez, supra*, 52 Cal.App.5th at p. 15, rev.gr.; *Murillo, supra*, 54 Cal.App.5th at p. 167, rev.gr.; *People v. Allison* (2020) 55 Cal.App.5th 449, 457 (*Allison*); *People v. Nunez* (2020) 57 Cal.App.5th 78, 91 (*Nunez*), review granted Jan. 13, 2021, S265918.)

Even if the jury was instructed on the natural and probable consequences doctrine—which appears unlikely, given the circumstances—the true findings on the special circumstance allegations likewise demonstrate Daley's ineligibility.  As noted, to be eligible for relief under section 1170.95, Daley must show he could not be convicted of murder after the amendments to the law made by Senate Bill 1437.  Senate Bill 1437 changed the law to prohibit malice from being imputed based solely on a defendant's participation in a crime.  (§ 188, subd. (a)(3); *Gentile, supra*, 10 Cal.5th at pp. 846–847.)  It did not change the principle that murder is a killing committed with malice aforethought.  Both before and after Senate Bill 1437's enactment, a defendant who kills with malice aforethought is guilty of murder.  Malice may be

14

express or implied. (§§ 187, subd. (a), 188, subd. (a).) Express malice exists when a defendant intends to kill. (§ 188, subd. (a)(1); *Gentile*, at p. 844.) "For implied malice, the intent requirement is satisfied by proof that the actual perpetrator ' "knows that his conduct endangers the life of another and . . . acts with conscious disregard for life." ' [Citation.]" (*Gentile*, at p. 850; *People v. Chun* (2009) 45 Cal.4th 1172, 1181.) Thus, by finding Daley acted with reckless indifference to human life, the jury necessarily found he acted with malice, and he could still be convicted under current law.

Daley argues that the jury's special circumstance findings are not preclusive in his case, because they predated our Supreme Court's decisions in *Banks* and *Clark*. "*Banks* and *Clark* 'clarified "what it means for an aiding and abetting defendant to be a 'major participant' in a crime who acted with a 'reckless indifference to human life.' " ' [Citation.] *Banks* identified certain factors to be considered in determining whether a defendant was a major participant; *Clark* identified factors to guide the determination of whether the defendant acted with reckless indifference to human life." (*Gomez, supra*, 52 Cal.App.5th at p. 13, fn. 5, rev.gr.)

The appellate courts are split on the question of whether a pre-*Banks* and *Clark* special circumstance finding makes a petitioner ineligible for section 1170.95 relief as a matter of law. (See *Jones, supra*, 56 Cal.App.5th at pp. 478–479, rev.gr. [collecting cases].) Our colleagues in Division Five have concluded that such a special circumstance does not, by itself, render a petitioner ineligible for relief. (*Torres, supra*, 46 Cal.App.5th at p. 1178, rev.gr.) *Torres* reasoned that *Banks* and *Clark* "construed section 190.2, subdivion (d) in a significantly

15

different, and narrower manner than courts had previously construed the statute." (*Id.* at p. 1179.) "Accordingly, in determining if [petitioner] could be convicted today of first degree murder, we cannot simply defer to the jury's pre-*Banks* and *Clark* factual findings that [petitioner] was a major participant who acted with reckless indifference to human life as those terms were interpreted at the time." (*Ibid.*) "No court has affirmed the special circumstances findings at issue post-*Banks* and *Clark*. There is therefore a possibility that [the petitioner] was punished for conduct that is not prohibited by section 190.2 as currently understood, in violation of [petitioner's] constitutional right to due process." (*Id.* at p. 1180, internal fn. omitted; *People v. Smith* (2020) 49 Cal.App.5th 85, 93 (*Smith*), review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 258 (*York*), review granted Nov. 18, 2020, S264954 [pre-*Banks*/*Clark* special circumstance finding "cannot preclude eligibility for relief under . . . section 1170.95 *as a matter of law*, because the factual issues that the jury was asked to resolve" in such a case "are not the same factual issues our Supreme Court has since identified as controlling."].)

As noted, other courts hold that a pre-*Banks* and *Clark* special circumstance finding bars section 1170.95 relief as a matter of law. They reason that section 1170.95 was not meant to be an avenue for a collateral attack on the sufficiency of the evidence to support a special circumstance finding (see, e.g., *Allison*, *supra*, 55 Cal.App.5th at pp. 453, 461), and a defendant seeking to challenge the sufficiency of the evidence to prove a pre-*Banks* and *Clark* major participant or reckless indifference finding must do so via a petition for writ of habeas corpus. (*Gomez*, *supra*, 52 Cal.App.5th at pp. 16–17, rev.gr.; *Galvan*,

16

*supra*, 52 Cal.App.5th at p. 1137, rev.gr.; *Jones, supra*, 56 Cal.App.5th at p. 483, rev.gr.; *Nunez, supra*, 57 Cal.App.5th at p. 96, rev.gr.)

In support of this view, some cases point out that *Banks* and *Clark* did not state a new rule of law, but merely clarified the already-existing meaning of "major participant" and "reckless indifference," terms that do not have specialized definitions and are interpreted as used in common parlance. (*Jones, supra*, 56 Cal.App.5th at pp. 482, 484, rev.gr.; *Nunez, supra*, 57 Cal.App.5th at p. 92, rev.gr.; *Allison, supra*, 55 Cal.App.5th at pp. 458–459.) While optional language was added to the pattern jury instructions after *Banks* and *Clark*, "no mandatory language or material changes were made to the CALCRIM special circumstances instructions," and there is no requirement that juries be instructed on the *Banks/Clark* clarifications. (*Nunez*, at pp. 92–93; *Jones*, at p. 484; *Allison*, at pp. 458–459.) Thus, the argument that a pre-*Banks/Clark* special circumstance finding must be presumed invalid exaggerates the impact of *Banks* and *Clark*. (See *Allison*, at p. 458; *Jones*, at p. 484.) There is "no basis to conclude as a general matter that a pre-*Banks* and *Clark* jury was instructed differently than a post-*Banks* and *Clark* jury, or resolved different factual issues, answered different questions, or applied different standards." (*Nunez*, at p. 94).

Additionally, this line of authority reasons that the *Torres/Smith/York* approach is inconsistent with the plain language of section 1170.95, because a defendant claiming ineligibility based on *Banks* and *Clark* does not meet the statutory requirement that he or she cannot be convicted *because of* changes to sections 188 or 189 made by Senate Bill 1437. (*Jones, supra*, 56 Cal.App.5th at p. 484, rev.gr.) "In order to be

17

eligible for resentencing, a defendant must show that he or she 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as part of Senate Bill No. 1437. (§ 1170.95, subd. (a)(3).) [¶] . . . Although [petitioner] is asserting that he could not now be convicted of murder, the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstance finding in *Banks* and *Clark*. Nothing about those requirements changed as a result of Senate Bill No. 1437. Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life." (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142, rev.gr.; *Murillo*, *supra*, 54 Cal.App.5th at p. 168, rev.gr.; *Allison*, *supra*, 55 Cal.App.5th at p. 460; *Nunez*, *supra*, 57 Cal.App.5th at pp. 94–95, rev.gr.)

Further, in concluding that the proper vehicle to challenge a pre-*Banks* and *Clark* special circumstance finding is a petition for writ of habeas corpus, courts point to the different burdens involved in a habeas petition and a section 1170.95 petition. A defendant challenging a pre-*Banks/Clark* special circumstance finding by means of a writ of habeas corpus must show that the record contains insufficient evidence to prove he or she acted as a major participant or with reckless indifference. (*Jones*, *supra*, 56 Cal.App.5th at p. 485, rev.gr.; *Galvan*, *supra*, 52 Cal.App.5th at pp. 1142–1143, rev.gr.; *Gomez*, *supra*, 52 Cal.App.5th at p. 17, rev.gr.) "By contrast, a petitioner who demonstrates a prima facie case for relief under section 1170.95 has shifted the burden to the People to prove beyond a reasonable doubt that they are ineligible for resentencing (that is, they still *could be* convicted of

18

murder despite the change to the felony-murder rule in § 189). [Citation.] . . . . [T]he *Torres*/*Smith*/*York* line of cases would read into section 1170.95 a new procedure allowing petitioners to ignore a special circumstance finding—no matter how well supported in the record—as well as the recognized method of challenging it. Such petitioners would be allowed to relitigate a prior jury finding at an evidentiary hearing where the prosecution bears the burden of proving the truth of the finding, beyond a reasonable doubt, a second time." (*Jones*, at p. 485.) Allowing petitioners to challenge a special circumstance finding via a section 1170.95 petition would give them an advantage over similarly situated defendants, based on the date of their convictions. (*Galvan*, at pp. 1142–1143; see *Nunez, supra*, 57 Cal.App.5th at pp. 96–97, rev.gr.)

Such a procedure is inconsistent with the Legislature's intent. "The Legislature made plain that its purpose in enacting section 1170.95 was to give defendants the benefit of the amendments to sections 188 and 189 in the absence of a factual basis for a murder conviction in light of the statutory revisions. But there is no indication in the statute's text or history of any legislative intent to permit defendants to challenge their murder convictions by attacking prior findings of fact." (*Nunez, supra*, 57 Cal.App.5th at p. 95, rev.gr.) "Nothing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding. In particular, subdivision (a)(3) of section 1170.95 says nothing about erroneous prior findings or the possibility of proving contrary facts if given a second chance. Rather, it requires that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, not *because a prior fact finder got the facts wrong*. The purpose

19

of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Allison, supra,* 55 Cal.App.5th at p. 461.)

While we acknowledge that both of the foregoing lines of authority are not without force, we respectfully disagree with our colleagues in Division Five and conclude that the cases holding that a special circumstance finding precludes relief as a matter of law are more persuasive. Accordingly, we conclude that the trial court correctly denied Daley's section 1170.95 petition because he is ineligible for relief as a matter of law.[6]

---

[6] In light of our conclusion, we do not reach the People's arguments that any error was harmless, and that the jury's true finding on the section 12022.53, subdivision (b) firearm use enhancement precluded relief.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

I concur:

EGERTON, J.

21

DHANIDINA, J., Concurring and Dissenting:

I agree with the majority's statement of facts and the law regarding the procedural steps Penal Code[1] section 1170.95 requires and as are described in *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, review granted March 18, 2020, S260493. The majority has also explained well the split among appellate courts about the interplay between section 1170.95 and a special circumstance finding that a defendant was a major participant in a murder who acted with reckless indifference to human life, which finding predates *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522.

But where the majority sides with the *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284, line of cases regarding the split, I side with *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011. In my view, a special circumstance finding that predates *Banks* and *Clark* does not render a defendant such as Daley ineligible for relief as a matter of law. (See, e.g., *People v. York* (2020) 54 Cal.App.5th 250, review granted Nov. 18, 2020, S264954; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835.) I therefore respectfully dissent as to that issue.

As the majority has said, under Senate Bill No. 1437, malice may no longer be imputed to a person based solely on the person's participation in the crime; now, the person must have acted with malice aforethought to be convicted of murder. (§ 188; *People v. Munoz* (2019) 39 Cal.App.5th 738, 749, review granted Nov. 26, 2019, S258234.) To that end, the natural and probable consequences doctrine no longer applies to murder. And a

---

[1] All further statutory references are to the Penal Code.

participant in enumerated crimes is liable under the felony-murder doctrine only if the participant was the actual killer; or with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life.  (§ 189, subd. (e); see *Munoz*, at pp. 749–750.)

The petitioning process Senate Bill No. 1437 created via section 1170.95 thus requires a prima facie showing that the defendant was not a major participant in the murder or did not act with reckless indifference to life.  Of course, a jury here found that Daley was a major participant in the murder who acted with reckless indifference to life.  However, that 2006 finding predates *Banks* and *Clark*.  In my view, those decisions had the effect of narrowing the field of defendants who are major participants who act with reckless indifference to human life.  (See, e.g., *People v. Torres*, *supra*, 46 Cal.App.5th at p. 1179; *People v. Smith*, *supra*, 49 Cal.App.5th at p. 93.)  It could be that a pre-*Banks* and *Clark* jury made "precisely the same finding it must make in order to convict a defendant of felony murder under the new law."  (Maj. opn. *ante*, at p. 14.)  But it also could be that evidence supporting the true finding the jury made in 2006 before *Banks* and *Clark* would not have been sufficient after them.

Section 1170.95 gives a defendant in Daley's situation the mere opportunity to make that showing, with the benefit of counsel.  I therefore agree with my colleagues in Division 5 that a section 1170.95 petition is a challenge to a murder conviction which may require consideration of a pre-*Banks* and *Clark* special circumstance finding.  (See generally *People v. York*, *supra*, 54 Cal.App.5th at p. 260; *People v. Smith*, *supra*, 49 Cal.App.5th 85; *People v. Torres*, *supra*, 46 Cal.App.5th 1168.)  In

2

this discrete situation involving a defendant convicted of a special circumstance pre-*Banks* and *Clark*, the defendant has made a sufficient showing to get past the preliminary prima facie level of review described in *Verdugo* and is entitled to appointment of counsel to assist in further briefing, i.e., to proceed to the second step of the prima facie review.

This conclusion does not open the door to wholesale challenges to *any* prior juror finding and to all manner of collateral attack. Rather, the California Supreme Court in *Banks* and *Clark* has, in one specific and limited instance, decisively clarified what it means to be a major participant in a murder who acts with reckless indifference to life. As that clarification could here reflect on Daley's murder conviction, I would therefore find that Daley is not ineligible for relief as a matter of law and direct the trial court to appoint counsel to represent him and to proceed in accordance with section 1170.95, subdivision (c).[2] (See, e.g., *People v. Smith*, *supra*, 49 Cal.App.5th at pp. 95–96; but see *People v. Law* (2020) 48 Cal.App.5th 811, review granted July 8, 2020, S262490 [error susceptible to harmless error analysis].)


DHANIDINA, J.

---

[2] The jury's true findings on gun allegations under sections 12022 and 12022.53, subdivision (b), also do not render Daley ineligible as a matter of law, as they do not establish that Daley's use of a firearm caused great bodily injury or death or that he was the actual killer.